Anna M. HESKETT, Administratrix
of the Estate of Bill Heskett,
Deceased, Appellant,

v.

Jack HESKETT and John Heskett d/b/a
Heskett & Heskett, Appellees.

No. 84945.

Court of Appeals of Oklahoma,
Division No. 4.

March 28, 1995.

Rehearing Denied April 24, 1995.

Ronald N. Ricketts, Gable & Gotwals, Inc., Tulsa, for appellant.

Lewis B. Ambler, Bartlesville, for appellees.

GOODMAN, Presiding Judge.

This appeal has been assigned to the accelerated docket pursuant to Civil Appellate Procedure Rule 1.203(A)(1)(a), 12 O.S.Supp. 1994, ch. 15, app. 2, after the trial court granted summary judgment to the defendants in the plaintiff's action seeking a declaratory judgment interpreting the rights of the parties under certain provisions of a law partnership agreement. Based upon our review of the record and applicable law, we affirm.

## I

In 1960, brothers Jack Heskett and Bill Heskett entered into a partnership for the practice of law. The partnership was later memorialized and controlled by a "Law Partnership (Limited) Agreement" which contained the following relevant provisions in Article VI(C) and (D) (emphasis added):

Upon the effective date of retirement or upon the death ... of any partner ... his interest in the partnership shall be terminated *immediately*.

Upon termination of a Senior Partner, a proper accounting shall be made of the capital and income accounts of each Senior Partner and of the net profit or loss of the partnership *from the date of the previous accounting to the date of dissolution.* The value of the interest of the Senior Partner withdrawing in any of these events shall be the sum of (1) his capital account, (2) his income account, and (3) *his proportionate share of unrealized accounts receivable for the next six months* as determined by the accountant for the partnership, *less twenty percent collection fee.* . . .

. . . .

In the event of the permanent withdrawal of a Senior Partner payment shall be made to him as follows: His capital account, income account and his *then existing share* of profit and loss shall be paid in full and in cash within a reasonable time after the date of withdrawal. *His share of accounts receivable for the next six months only shall be paid to him monthly, less a twenty percent collection fee* to be retained by the remaining partners. All payments in excess of the capital account are to be taxable to the recipient and deductable [*sic* ] by the remaining Senior Partners.

Bill Heskett died October 22, 1993. On February 16, 1994, his widow, acting as administratrix of his estate, filed this action under the Uniform Declaratory Judgments Act, 12 O.S.1991 §§ 1651 through 1657, seeking a declaration of the parties' respective rights under Article VI(C), and an accounting. She contended that the estate was entitled to "(1) Bill Heskett's percentage of the Heskett & Heskett accounts receivable existing as of October 22, 1993, regardless when those accounts are collected and (2) Bill Heskett's percentage of the accounts generated by the partnership business during the six months following October 22, 1993, regardless when the accounts are billed and collected, less a twenty (20) percent collection discount."

Defendants Jack Heskett and John Heskett d/b/a Heskett & Heskett, answered admitting that the plaintiff is entitled to an accounting, but generally denying the plaintiff's interpretation of the agreement. The defendants contended that the "Plaintiff is only entitled to one-half (½) of the accounts receivable that existed on the 22nd day of October, 1993, that are collected in the six (6) months following said date, less a twenty percent (20%) collection fee." The plaintiff's interpretation, said the defendants, "would violate [Rule of Professional Conduct 5.4(a)(1) and (2), 5 O.S.1991, ch. 1, app. 3–A] [1] in that Plaintiff is asking Defendant to pay compensation in excess of the services rendered by the deceased, Bill Heskett." [2]

The administratrix filed a motion for summary judgment June 8, 1994, asserting that the written partnership agreement is not ambiguous, and therefore "[s]ummary judgment is appropriate because interpretation of the agreement is a question of law." She relied upon the definition of "unrealized receiv-

1. The rule, derived from the ABA Model Rule of Professional Conduct DR 3–102, states that:

A lawyer or law firm shall not share legal fees with a nonlawyer, except that:
   (1) an agreement by a lawyer with the lawyer's firm, partner, or associate may provide for the payment of money, *over a reasonable period of time* after the lawyer's death, to the lawyer's estate or to one or more specified persons;
   (2) a lawyer who undertakes to complete unfinished legal business of a deceased lawyer

may pay to the estate of the deceased lawyer that proportion of the total compensation *which fairly represents the services rendered by the deceased lawyer;* ... (Emphasis added.)

2. The defendants reserved their right to a counterclaim against the plaintiff for reimbursement of monies already paid based upon a "recently discovered" partnership bank account imbalance.

ables" found in the Internal Revenue Code at 26 U.S.C.A. § 751(c), for the proposition that she is entitled to payment for "services rendered, or to be rendered."

The defendants' response generally agreed with the plaintiff's recitation of undisputed material facts, but objected to the plaintiff's reliance on a tax code "definition which Congress enacted 'to prevent the use of the partnership as a device for obtaining capital gain treatment on fees or other rights to income.'" Instead, the defendants contended that the plaintiff's definition of "unrealized accounts receivable" as the term is used in the partnership agreement, is at war with the term as used in "the ordinary accounting sense," which they say "contemplates contractual obligations owing to a person on an open account, wherein payment has yet to be received." The defendants concluded that:

Applying this interpretation to the present situation, there certainly were a sum certain number of accounts receivable existing on the date of Bill Heskett's demise. Under the partnership agreement, these contractual obligations would have been divided between Jack and Bill Heskett upon their receipt, and not before. In other words, these unpaid accounts receivables [*sic*] constituted potential income which would be reported as income as received.

In a judgment filed December 23, 1994, the trial court denied the plaintiff's motion for summary judgment, and granted the defendants judgment pursuant to District Court Rule 13(e), 12 O.S.Supp.1994, ch. 2, app., which states that:

If it appears to the court that there is no substantial controversy as to any material fact and that one of the parties is entitled to judgment as a matter of law, the court shall render judgment to said party whether or not he is the moving party.

The administratrix appeals.

## II

■ The parties vigorously contend that the written partnership agreement is not ambiguous, but each asserts that their construction is the correct one. Both parties, however, attached extrinsic evidence as exhibits to their pleadings. The intention of parties to a written contract "is to be ascertained from the writing alone...." 15 O.S.1991 § 155. "If the language of a contract is clear and without ambiguity, the Court is to interpret it as a matter of law.... Similarly, the existence of an ambiguity is a decision to be made by the Court." *Corbett v. Combined Communications Corp.*, 654 P.2d 616, 617 (Okla.1982) (citations omitted). As the court said in *Empire Oil & Refining Co. v. Babson*, 182 Okla. 336, 77 P.2d 682 (1938) (syllabus by the court):

To ascertain the meaning of a written contract the court must look to the whole instrument, having resort to the natural signification of the words used, in the order of grammatical arrangement in which the framers of the instrument have placed them. If, thus regarded, the words embody a definite meaning which involves no absurdity and no contradiction between different parts of the same writing, then the meaning apparent on the face of the instrument is the one to be taken, *and no extraneous evidence is proper to give a different construction.* (Emphasis added.)

We have examined the partnership agreement, and conclude that no ambiguity exists in the relevant provisions. The extrinsic evidence was thus improperly introduced, and will not be considered by this court.

■ There being no disputed issue of material fact, we are presented with a pure question of law. "When the facts are presented to the trial court by stipulation, depositions, and other documentary material, this Court is free to substitute its analysis of the record for the trial court's analysis." *Loffland Bros. Co. v. Overstreet*, 758 P.2d 813, 817 (Okla.1988).

Established principles of contract interpretation guide us in evaluating the competing constructions advanced by the parties. The "language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." 15 O.S.1991 § 154. The "words of a contract are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning, unless used by the parties in a technical sense," 15 O.S.1991 § 160, in which case the "[t]echnical words are to be interpreted as usually understood by persons

in the profession or business to which they relate, unless clearly used in a different sense." 15 O.S.1991 § 161. In any case, it is fundamental that a party to an unambiguous written contract is estopped to insist upon an unnatural construction in order to support a construction more favorable to herself. *Golden v. Golden,* 155 Okla. 10, 8 P.2d 42 (1932).

■ The assertion of the administratrix is twofold, first that the estate is entitled to share indefinitely in uncollected accounts receivable existing on the date of death; and second, that she is entitled to a proportionate share of fees generated by the partnership during the six months following death. We hold that the construction urged by the administratrix on both counts is untenable, and contrary to both the common usage of the agreement's terminology and its unambiguous terms.

First, the partnership agreement unambiguously dictates that the death of a partner terminates his partnership interest "immediately." Clearly the agreement contemplates and states that the estate of the deceased partner is entitled to his "then existing share" of law firm revenue generated up to the date of death. The agreement is equally unambiguous in stating that the estate's proportionate interest in uncollected accounts receivable existing on the date of death survives for six months following the death, subject to a twenty percent collection fee. Payment of the estate's share is to be on a monthly basis for six months.

We hold that the administratrix's first assertion is without merit and that, under the terms of the partnership agreement, the estate is entitled to a proportionate share of partnership accounts which were existing, but uncollected, on October 22, 1993, after which date the estate is entitled to six monthly payments, less a twenty percent collection fee.

Second, the administratrix's contention that the estate is entitled to share in fees generated by the partnership during the six-month period after death is likewise an unnatural construction in conflict with the express terms of the agreement. We reject the administratrix's argument that the Internal Revenue Code definition of "unrealized receivables," *i.e.,* "services rendered, or *to be rendered,*" supports a construction that the estate is entitled to share posthumously in fees generated after October 22, 1993. (Emphasis added.)

A reading of the relevant provisions of the agreement clearly reveals that the deceased partner's "then existing share" of accounts receivable is to be evaluated *as of the date of his death.* His interest in future accounts terminated "immediately."

We hold that the administratrix's reliance on the tax code definition of "unrealized receivables" is an impermissible attempt to invoke an unnecessarily technical definition in conflict with the "ordinary and popular sense" of the phrase as contemplated by the framers of the partnership agreement. The estate is not entitled to share in fees generated by the successor partnership after October 22, 1993.

We therefore hold that the trial court correctly granted the defendants summary judgment as a matter of law pursuant to District Court Rule 13(e), 12 O.S.Supp.1994, ch. 2, app., and accordingly we affirm the appealed judgment.

AFFIRMED.

RAPP, V.C.J., and STUBBLEFIELD, J., concur.