**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 26, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

In re: TRENTON J. BALDWIN, d/b/a
Cross-Triangle Brangus, d/b/a Spot
Light Flowers & Gifts, d/b/a With
Photography On The Side; CAROLYN
S. BALDWIN, a/k/a Carolyn S.
Bailey, d/b/a Borken Bow School of
Dance, d/b/a Spot Light Flowers &
Gifts,

        Debtors.
_____

GERALD R. MILLER, Trustee,

        Plaintiff - Appellant,

v.

BILL AND CAROLYN LIMITED
PARTNERSHIP, an Oklahoma
Limited Partnership; THE MAXIE O.
"BILL" BAILEY LIVING TRUST;
MAXIE O. "BILL" BAILEY,

        Defendants - Appellees,

and

TRENTON J. BALDWIN; CAROLYN
S. BALDWIN,

        Defendants.
_____

No. 06-7083

In re: TRENTON J. BALDWIN; CAROLYN S. BALDWIN, a/k/a Carolyn S. Bailey,

Debtors.

_____

BILL AND CAROLYN LIMITED PARTNERSHIP, an Oklahoma limited partnership; THE MAXIE O. "BILL" BAILEY LIVING TRUST; MAXIE O. "BILL" BAILEY,

Appellants,

v.

GERALD R. MILLER, Trustee,

Appellee.

No. 09-7004

---

**No. 06-7083**
**APPEAL FROM THE UNITED STATES BANKRUPTCY**
**APPELLATE PANEL FOR THE TENTH CIRCUIT**
**(BAP No. EO-05-114)**

**No. 09-7004**
**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**
**(D.C. No. 08-CV-00254-RAW)**

---

Ross A. Plourde (Drew D. Webb with him on the briefs) of McAfee & Taft, Oklahoma City, Oklahoma, for Gerald R. Miller, Trustee.

Charles E. Wetsel of Robertson & Williams, Oklahoma City, Oklahoma, for Bill and Carolyn Limited Partnership, the Maxie O. "Bill" Bailey Living Trust, and Maxie O. "Bill" Bailey.

Before **KELLY**, **McKAY**, and **LUCERO**, Circuit Judges.

_____

**McKAY**, Circuit Judge.

_____

These two consolidated appeals arise from separate adversary proceedings in a Chapter 7 bankruptcy case. Both adversary proceedings involve the same parties and relate to a family limited partnership in which Debtor Carolyn Baldwin owned a 99% limited partnership interest at the time the bankruptcy proceeding commenced. The parties have agreed on appeal that the bankruptcy trustee stepped into the shoes of the debtor with respect to this partnership interest and was entitled to assert whatever rights the limited partner had under the partnership agreement. The question now before us is what exactly these rights are. Specifically, we must decide whether the trustee has the right to seek dissolution of or withdrawal from the partnership. We must also determine whether the buy/sell offer made by the trustee based on a price of $3000 per percentage point of partnership interest is valid and enforceable under the partnership agreement's withdrawal provision.

### BACKGROUND

At the time she and her husband filed their bankruptcy petition in 2004, Mrs. Baldwin was the sole limited partner of a family limited partnership created by her father as an estate planning tool in 1994. The partnership's sole general

partner is a trust, consisting of Mrs. Baldwin's parents as the sole trustees. When the partnership was first formed, Mrs. Baldwin owned a 7.73993% limited partnership interest, while her parents' trust owned a 91.26007% limited interest and a 1% general interest. Soon after the partnership's creation, the general partner assigned its entire limited interest to Mrs. Baldwin. Thus, at the time she filed for bankruptcy, Mrs. Baldwin owned a 99% limited interest in the partnership, while the general partner had a 1% general interest with exclusive management and control rights. The partnership assets at the time of the bankruptcy filing consisted of approximately 200 acres of undeveloped land and a house—the debtors' primary residence—that the partnership had constructed on the land.

Following initiation of bankruptcy proceedings, the bankruptcy trustee filed an adversary proceeding against the partnership and the general partner, seeking a declaration that Mrs. Baldwin's interest in the partnership now belonged to the bankruptcy estate and that the partnership should be dissolved due to the general partner's refusal to recognize the bankruptcy estate's interest. After a trial, the bankruptcy court ruled in favor of the trustee on both of these issues and ordered dissolution of the partnership. The Bankruptcy Appellate Panel affirmed the bankruptcy court on the first issue but reversed as to dissolution, and the trustee appealed the BAP's reversal of the bankruptcy court's dissolution order to this court. We stayed any action in the appeal pending resolution of the second

-4-

adversary proceeding, which was then ongoing in the bankruptcy court.

In the second adversary proceeding, the trustee sought to enforce a withdrawal notice and buy/sell offer that he gave to the general partner following the BAP's ruling. In the buy/sell offer, the trustee offered to purchase the general partner's 1% partnership interest for $3000, payable immediately in cash, or to sell the 99% limited partnership interest for $297,000, also payable immediately in cash. The bankruptcy court held that this offer was valid and enforceable under the partnership agreement, and the non-debtor Defendants—the limited partnership, the general partner, and Mrs. Baldwin's father—appealed. Pursuant to 28 U.S.C. § 158(c)(1)(B), the trustee elected to have the appeal heard by the district court. After the opening brief and response brief had been filed, but prior to the deadline for filing a reply brief, the district court affirmed the bankruptcy court's ruling. Defendants subsequently filed a reply brief and motion for rehearing. The district court then granted rehearing as to consideration of the reply brief, denied rehearing on the merits, and affirmed the bankruptcy court. Defendants appealed, and we consolidated this appeal with the appeal from the first adversary proceeding for purposes of argument and disposition.

## DISCUSSION

In an appeal in a bankruptcy case, we independently review the bankruptcy court's decision, applying the same standard as the BAP or district court. *See In re Albrecht*, 233 F.3d 1258, 1260 (10th Cir. 2000); *Broitman v. Kirkman (In re*

*Kirkland)*, 86 F.3d 172, 174 (10th Cir. 1996). We thus review the bankruptcy court's legal determinations de novo and its factual findings for clear error. *In re Kirkland*, 86 F.3d at 174.

The parties have raised three main issues in these consolidated appeals. First, the trustee argues that the BAP erred in reversing the bankruptcy court's order of dissolution. Second, Defendants argue that the district court erred in affirming the bankruptcy court's ruling that the trustee's withdrawal notice and buy/sell offer were valid and enforceable. Third, Defendants argue that the district court erred in denying their motion for rehearing on the merits.

## I. Dissolution

The trustee argues that the BAP erred in concluding that he was not entitled as the limited partner to dissolve the partnership. In the bankruptcy court and BAP proceedings, the trustee argued that dissolution was warranted under both the partnership agreement and Oklahoma law. On appeal to this court, the trustee does not contest the BAP's conclusion that none of the triggering events for dissolution under the partnership agreement had occurred. He argues only that judicial dissolution is warranted under Oklahoma law.

The first question we must consider is one of jurisdiction. In their appellate brief, Defendants argue that we do not have jurisdiction over this appeal because the BAP's decision was not a final order under 28 U.S.C. § 158(d). We disagree. "[T]he appropriate 'judicial unit' for application of these finality

requirements in bankruptcy is not the overall case, but rather the particular adversary proceeding or discrete controversy pursued within the broader framework cast by the petition." *Adelman v. Fourth Nat'l Bank & Trust Co.* (*In re Durability, Inc.*), 893 F.2d 264, 266 (10th Cir. 1990). This particular adversary proceeding and both of the issues raised therein—whether Mrs. Baldwin's partnership interests became property of the bankruptcy estate and whether dissolution of the partnership was warranted under either the partnership agreement or Oklahoma law—were fully resolved by the BAP's order. We accordingly conclude that the BAP's order was a final, appealable order.

We thus turn to the merits of this issue. Oklahoma law provides that "[o]n application by or for a partner, the district court may decree dissolution of a limited partnership whenever it is not reasonably practicable to carry on the business in conformity with the partnership agreement." Okla. Stat. tit. 54, § 346 (2000). The trustee argues that he is entitled to judicial dissolution of the limited partnership pursuant to this statute. Because family estate planning was the purpose of the partnership, he argues, the partnership can no longer lawfully carry on its business in conformity with the partnership agreement—it would be improper for the limited partnership to be run for family estate planning purposes now that the 99% limited partnership interest has become part of the bankruptcy estate. He also argues that the general partner's refusal to acknowledge the bankruptcy estate's interest in the partnership is grounds for judicial dissolution.

While Mrs. Baldwin's father testified at trial that the partnership was established for estate planning purposes, the partnership agreement itself expressly provides that "[t]he purpose of this Partnership shall be to engage in general business activities including but not limited to the purchasing, holding, construction, owning, operation, improving, managing, mortgaging, leasing and selling of and dealing in and with real property." (Appellant's App., Case No. 09-7004, at 30.) Mrs. Baldwin's father testified at trial about the partnership's holding and management of real property and about various profit-seeking activities the partnership had engaged in over the past several years. He also testified that all of the partnership's profits had been put back into the partnership property. Finally, he testified that he anticipated property values to rise in the future, at which point the partnership would potentially develop a subdivision or sell some or all of its acreage for a profit. This testimony was not rebutted at trial, nor was any evidence introduced to indicate that the limited partner's bankruptcy filing had caused the partnership to deviate from its stated purpose of engaging in business activities including holding, owning, improving, and managing real property.

After reviewing the partnership agreement and the evidence introduced at trial, we agree with the BAP that the bankruptcy court clearly erred in finding the partnership could no longer carry on its business in conformity with the partnership agreement. All of the evidence in the record indicates that the

-8-

partnership was continuing to carry out its business in accordance with the partnership agreement just as it had been for the past ten years. We see nothing in the Oklahoma statute permitting judicial dissolution when a partnership's business operations are continuing to be carried out in accordance with the partnership agreement, even if a new limited partner wishes to change the operation of the partnership. We note that the partnership agreement does not require any participation by or cooperation with the limited partner in the partnership's business activities, and nothing in the partnership agreement required the general partner to acknowledge or accede to the new limited partner's requests for the partnership to deviate from its long-term investment strategies. We also agree with the BAP that the general partner did not breach the partnership agreement or call its validity into question by disputing a contested issue regarding the bankruptcy trustee's interest in the partnership. We reject the trustee's argument that certain alleged improper practices by the general partner constituted grounds for dissolution. We see nothing clearly erroneous in the bankruptcy court's finding that the general partner's practices did not amount to a breach of fiduciary duty, and the trustee has cited to no legal authority indicating that the complained-of actions otherwise justified dissolution of the limited partnership under Oklahoma law.

Thus, because we see nothing in either the partnership agreement or the evidence introduced at trial to indicate that it was not reasonably practicable for

the partnership to carry on its business in conformity with the partnership agreement, we affirm the BAP's reversal of the bankruptcy court's order of dissolution.

## II. Withdrawal and enforceability of the buy/sell offer

In his withdrawal notice and buy/sell offer, the trustee offered to sell the 99% limited partnership interest for $297,000 or to purchase the general partner's 1% interest for $3000, based on a $3,000 price per percentage point of partnership interest. The bankruptcy court and district court concluded that this notice and offer were valid and enforceable under the partnership agreement's withdrawal provision. On appeal, Defendants argue both that the trustee was not entitled to withdraw from the partnership and that the buy/sell offer violated the partnership agreement's requirement that sale and purchase offers be "on identical terms."

Paragraph 16 of the partnership agreement provides in relevant part as follows:

16.    Withdrawal of a Partner.

16.1 Notice of Withdrawal. A Partner may withdraw from the Partnership after delivering written notice of his intention to withdraw to the other Partner at least thirty (30) days prior to the proposed date of withdrawal . . . . Such notice of withdrawal shall include an offer by the Withdrawing Partner to purchase the interest of the Remaining Partner (the "purchase offer") on stated terms and

for a stated amount and, in the alternative, to sell the Withdrawing Partner's interest (the "sale offer") on identical terms.

     16.2  <u>Option of Remaining Partner.</u>  For thirty (30) days after the delivery of such notice of withdrawal, the Remaining Partner shall have the option to accept the purchase offer o[r] the sale offer, or serve notice that the Partnership be terminated and liquidated in accordance with Section 15.3 herein.

(Appellants' App., Case No. 09-7004, at 36.)

Defendants argue that the trustee was not entitled to withdraw from the partnership, notwithstanding this provision, because withdrawal of the limited partner would result in a dissolution. This argument is premised on a misreading of the BAP's decision. Defendants argue that the BAP held that the limited partner was not permitted to cause dissolution of the partnership agreement, and they assert this holding applied either to a direct dissolution or to actions that might result in dissolution. However, the BAP simply held—and we agree—that neither the partnership agreement nor Oklahoma law permitted the trustee to *directly* dissolve the partnership. Indeed, the BAP specifically noted that ¶ 16 provided for a separate withdrawal right which was not affected by the BAP's ruling on dissolution. Nothing in the BAP's ruling or our affirmance thereof negates the partnership agreement's withdrawal provision, even if dissolution is a possible result of its enforcement.

We are also not persuaded that other provisions in the partnership agreement trump ¶ 16. The fact that ¶ 15 does not list withdrawal by the limited partner as an event potentially triggering dissolution of the partnership does not mean that ¶ 16 should be disregarded. Nor do provisions describing entitlement to capital contributions outside of the withdrawal context trump ¶ 16's specific description of the buy/sell procedure that may be used by either partner to withdraw from the partnership. By its clear terms, ¶ 16 entitles the limited partner to withdraw by making a buy/sell offer in accordance with the provisions of ¶ 16.

The parties also dispute the validity of the trustee's buy/sell offer under ¶ 16 based on this provision's requirement that the sell offer be "on identical terms" with the purchase offer. Defendants argue that "identical terms" means that the limited partner must be willing to buy or sell for an identical total amount, while the trustee argues that "identical terms" means that the buy and sell offers must be based on the same price per percentage point of partnership interest and the same proposed payment terms. We agree with the bankruptcy court and district court that the more natural reading of ¶ 16 is the interpretation asserted by the trustee—that the "terms" that must be identical under ¶ 16 include the proposed payment terms and the pro rata value for a percentage of partnership

-12-

interest.[1] We are simply not persuaded that "on identical terms" means for an identical total amount, particularly where ¶ 16 distinguishes between the "terms" and "amount" in the context of the purchase offer. We thus agree with the bankruptcy court and district court that the trustee's buy/sell offer satisfied the requirements of ¶ 16 because it was based on the same $3000 value per percentage point of partnership interest and the same term that the price be paid immediately in cash.

Defendants further argue that the buy/sell offer was invalid because it was intrinsically inequitable and did not account for the management and control differences between the general and limited partnership interests. While it is true that the trustee's buy/sell offer did not distinguish between these interests, such was not required by the partnership agreement's withdrawal provision. Under Oklahoma law, which controls our review of the partnership agreement, "[i]t is the duty of the court to enforce valid voluntary contracts" as written. *Barnes v. Helfenbein*, 548 P.2d 1014, 1021 (Okla. 1976); *see also Heskett v. Heskett*, 896 P.2d 1200, 1202 (Okla. Civ. App. 1995) (applying Oklahoma laws regarding contract interpretation to a written partnership agreement). "The fairness or unfairness, folly or wisdom, or inequality of contracts are questions exclusively within the rights of the parties to adjust at the time the contract is made." *Barnes*,

---

[1] We also note that two of the three experts who testified at trial stated that, under customary usage, "identical terms" would be interpreted to mean the same price per ownership interest, not an identical total amount.

548 P.2d at 1021. While the language of a contract does not govern if it "involve[s] an absurdity," Okla. Stat. tit. 15, § 154 (1993), we are not persuaded that calculating the sale and purchase amounts for disparate partnership interests on a pro rata basis is absurd. For similar reasons, we reject Defendant's argument that the withdrawal provision should not be enforced because it defeats the purpose of forming a family partnership. This potential problem with the partnership agreement is simply not sufficient to prevent its enforcement under Oklahoma principles of contract interpretation.

### III. Denial of motion for rehearing

Defendants argue that the district court erred in denying their motion for rehearing because the court failed to address any of their actual propositions of error. We disagree. While the court did not expressly state the reasons why it agreed with the bankruptcy court, it stated that it had reviewed the record and fully considered Defendants' arguments. Nothing in the district court's order suggests that it failed to consider any of the arguments raised by the appellants. It simply did not find these arguments convincing. We see no error in the court's terse affirmance of the bankruptcy court's ruling.

### CONCLUSION

For the foregoing reasons, we **AFFIRM** the BAP's decision affirming in part and reversing in part the bankruptcy court's ruling in the first adversary proceeding. We **AFFIRM** the district court's order affirming the bankruptcy

-14-

court's decision as to the enforceability of the trustee's withdrawal notice and buy/sell offer.