**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 19, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

In re:  JOSE L. GARCIA-MORALES,

    Debtor.

------------------------------

ROBERTSON B. COHEN, Chapter 7
Trustee,

    Appellant,

v.

JOSE L. GARCIA-MORALES,

    Appellee.

--------------------------

NATIONAL ASSOCIATION OF
CONSUMER BANKRUPTCY
ATTORNEYS; NATIONAL
CONSUMER BANKRUPTCY
RIGHTS CENTER,

    Amici Curiae.
_____

No. 24-1384

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:23-CV-02178-PAB)**
_____

David V. Wadsworth of Wadsworth Garber Warner Conrardy, P.C., Littleton, Colorado, for Appellant.

Stephen H. Swift of Law Office of Stephen H. Swift, P.C., Colorado Springs, Colorado, for Appellee.

Tara E. Salinas of Salinas Law Group, Denver, Colorado (Michael D. Sousa of University of Denver Sturm College of Law, Denver, Colorado, with her on the brief), filed an amicus curiae brief for the National Association of Consumer Bankruptcy Attorneys and the National Consumer Bankruptcy Rights Center.

_____

Before **BACHARACH**, **PHILLIPS**, and **FEDERICO**, Circuit Judges.

_____

**FEDERICO**, Circuit Judge.

_____

This appeal concerns whether a debtor must turn over his federal income tax refund to a bankruptcy trustee to become part of the estate of assets payable to creditors. Both the bankruptcy court and the district court denied the bankruptcy trustee's motion to compel turnover of the debtor's federal income tax refund because they determined that the refund is wholly exempt from being part of the bankruptcy estate under Colorado law. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 158(d)(1). Having considered the parties' arguments and the record below, we affirm the district court's decision upholding the bankruptcy court's denial of the trustee's motion to compel turnover.

2

**I**

On September 28, 2021, Jose L. Garcia-Morales voluntarily petitioned for bankruptcy under Chapter 7. A Chapter 7 bankruptcy provides for the sale of a debtor's nonexempt property and the distribution of the proceeds to creditors. *See In re Borgman*, 698 F.3d 1255, 1257 (10th Cir. 2012) ("In a Chapter 7 bankruptcy, a debtor's property is liquidated and the proceeds distributed to creditors.").

In his schedule of assets, Garcia-Morales listed his 2021 tax refunds payable in 2022 but deemed such refunds valueless to creditors. He also asserted that the refunds would be 100 percent exempt from the bankruptcy estate under Colorado law. *See* Colo. Rev. Stat. § 13-54-102(1)(o) (2021).

The parties filed a stipulation in bankruptcy court wherein Garcia-Morales agreed to file tax returns for 2021 and turn over any refunds to the Chapter 7 trustee. The trustee agreed to return any exempt portion of the tax refund to Garcia-Morales. The bankruptcy court approved the stipulation.

Garcia-Morales is married, but his spouse did not join the voluntary petition for bankruptcy. Nonetheless, Garcia-Morales and his spouse jointly filed federal and state tax returns in 2021, which he then provided to the trustee. The tax returns indicated that Garcia-Morales was entitled to a $1,455 federal income tax refund and a $554 state income tax refund. The

3

federal refund was paid directly to the trustee, while the state refund was paid to Garcia-Morales.[1]

Upon receipt of the tax refunds, the trustee moved to compel turnover of the non-exempt portions of the tax refunds as estate assets payable to creditors. The trustee argued that Garcia-Morales had "partially" complied with the stipulation for turnover, but that he erroneously claimed that 100 percent of the federal tax refund is exempt. Aplt. App. at 73–74.

The parties stipulated that Garcia-Morales and his spouse reported and calculated the following in their 2021 federal tax return:

| | |
|---|---|
| Total Wages | $99,147 |
| Total Taxable Income | $74,047 |
| Total Tax Due | $8,485 |
| Total Federal Income Tax Withheld from W-2 | $8,140 |
| Refundable Child Tax Credit | $1,800 |
| Total Payments | $9,940 |
| Total Federal Refund | $1,455 |

*Id.* at 97. The parties also stipulated that 72 percent of the W-2 withholdings were attributable to Garcia-Morales and the remaining 28 percent were attributable to his spouse.

The bankruptcy court denied the trustee's motion to compel turnover, concluding that the federal income tax refund is 100 percent exempt under

---

[1] The federal refund is being held by the trustee pending a resolution of this appeal. The state refund is not at issue in this appeal.

Colorado law because it was based upon and caused by a refundable child tax credit. *Id.* at 163. The trustee appealed to the United States District Court for the District of Colorado, which affirmed the bankruptcy court on September 3, 2024. The trustee now timely appeals.

## II

"In an appeal in a bankruptcy case, we independently review the bankruptcy court's decision, applying the same standard as the . . . district court." *In re Baldwin*, 593 F.3d 1155, 1159 (10th Cir. 2010). We review the bankruptcy court's legal conclusions de novo and its factual findings for clear error. *Id.* Although we may also look to the district court's intermediate appellate analysis to inform our review, we owe no deference to the district court's decision. *In re Paige*, 685 F.3d 1160, 1178 (10th Cir. 2012).

## A

A bankruptcy estate is created when a petition for bankruptcy is filed. 11 U.S.C. § 541(a). The estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." *Id.* § 541(a)(1). The estate also includes a "tax refund attributable to the pre-petition portion of the taxable year in question." *In re Barowsky*, 946 F.2d 1516, 1519 (10th Cir. 1991). Such tax refunds are comprised of "payments," which

5

come from multiple sources, including refundable tax credits.[2] *Borgman*, 698 F.3d at 1261. When an individual's tax payments exceed his tax liability, he receives a tax refund of his "overpayment." *Id.* at 1260. A debtor's property is generally "liquidated and the proceeds [are] distributed to creditors." *Id.* at 1257. But that debtor may claim certain exemptions. 11 U.S.C. § 522(b)(2), (d).

Colorado has opted out of the Bankruptcy Code and provides its own exemptions. *See* Colo. Rev. Stat. § 13-54-107. Garcia-Morales seeks to claim an exemption for "[t]he full amount of any federal or state income tax refund

---

[2] By contrast, nonrefundable tax credits are not "payments" and "never give[] rise to a 'refund.'" *Borgman*, 698 F.3d at 1261.

*attributed to* an earned income tax credit or a child tax credit,"[3] Colo. Rev. Stat. § 13-54-102(1)(o) (2021) (emphasis added). He argues that 100 percent of his federal income tax refund is exempt under the state law because it is "attributed to" the refundable child tax credit that he received.

## B

We are tasked with interpreting Colorado law and are thus bound by the rulings of the Colorado Supreme Court. *See Johnson v. Riddle*, 305 F.3d 1107, 1118 (10th Cir. 2002). The Colorado Supreme Court, however, has not yet interpreted the meaning of "attributed to" in the context of this tax

---

[3] After Garcia-Morales petitioned for bankruptcy, Colorado added a tracing provision:

> To the extent that exempt assets are commingled with nonexempt assets, a first-in first-out accounting shall be used to determine the portion of the commingled assets to which the exemption applies. If exempt assets are commingled with nonexempt assets as part of a single transaction, any amounts withdrawn from an account for the purpose of such transaction shall be assessed on a pro rata basis. This subsection (6) applies to all provisions of the Colorado Revised Statutes concerning the exemption of assets from seizure, except for exemptions that require segregation.

Colo. Rev. Stat. § 13-54-102(6) (2022). Colorado also amended the exemption provision at issue in this appeal, but it did not amend the "attributed to" language in the income tax refund exemption. *See id.* § 13-54-102(1)(o) (2022) (exempting "[t]he full amount of any federal or state income tax refund attributed to an earned income tax credit or *any* child tax credit, *whether as a refundable tax credit or as a nonrefundable reduction in tax*" (emphases added)).

7

exemption statute, section 13-54-102(1)(o), nor is the phrase defined in the statute. As such, we must predict how the Colorado Supreme Court would rule. *See id.*

Our analysis begins with the statute's plain language. *Vaughan v. McMinn*, 945 P.2d 404, 408 (Colo. 1997). In the absence of a statutory definition, "we construe a statutory term in accordance with its ordinary or natural meaning." *Cowen v. People*, 431 P.3d 215, 218 (Colo. 2018) (internal quotation marks omitted). To do so, we may consider dictionary definitions. *Id.* If the term is clear and unambiguous, we look no further and apply the statute as written. *Town of Superior v. Midcities Co.*, 933 P.2d 596, 600 (Colo. 1997). But if there is ambiguity, we consider external sources to ascertain legislative intent. *Cowen*, 431 P.3d at 218.

As noted, Colorado law provides an exemption for "[t]he full amount of any federal or state income tax refund *attributed to* an earned income tax credit or a child tax credit." Colo. Rev. Stat. § 13-54-102(1)(o) (2021) (emphasis added). At the heart of this appeal is the meaning of the phrase "attributed to."

The trustee argues that a tax refund is "attributed to" all components giving rise to the refund, including both exempt and nonexempt payment sources. In other words, the trustee asserts that a tax refund is attributed to both refundable child tax credits and wage withholdings, and the court

8

must determine what percentage of the tax refund is attributed to each source. To do so, the trustee argues, the court should apply a pro-rata method, under which only a portion of Garcia-Morales' federal tax refund would be exempt from the bankruptcy estate.

Garcia-Morales, on the other hand, argues that the phrase "attributed to" means but-for causation, and the entire amount of the refund is exempt because his refundable child tax credit caused the refund. Garcia-Morales also asserts that any ambiguity must be resolved in his favor because of the liberal exemption rule in Colorado. *See Roup v. Com. Rsch., LLC*, 349 P.3d 273, 276 (Colo. 2015) (noting that courts in Colorado "liberally construe exemptions in favor of debtors" to preserve the debtor's means of support).

## C

We look first to the statute's plain language. The bankruptcy and district courts both concluded that the phrase "attribute to" means some degree of causation. *See* Aplt. App. at 160 (noting that "attribute" means to "explain as caused or brought about by" or to "regard as occurring in consequence of or on account of" (quoting Webster's Third New International Dictionary 142 (1976))); *see id.* at 230 (similar). We agree that this is the best, most natural reading of the phrase – that "attributed to" means some degree of causation.

9

More specifically, both the bankruptcy court and the district court noted that under Colorado law, "but-for" causation is the typically the test for causation. *See, e.g., Rocky Mountain Planned Parenthood, Inc. v. Wagner*, 467 P.3d 287, 292 (Colo. 2020). This causation test simply means that an action "produces the result complained of, and without which the result would not have occurred." *Id.* (brackets and internal quotation marks omitted). We agree.

Applied here, the parties stipulated that in his federal tax return, Garcia-Morales claimed a refundable child tax credit in the amount of $1,800. Yet, his federal tax refund was for $1,455. Hence, without (or but-for) the refundable tax credit, the tax refund would not have occurred.

The trustee's proposed reading, calling for and resulting in the use of a pro-rata calculation method, would needlessly convolute the best interpretation of this language. Nothing in the statutory language suggests that we should use a pro-rata method. Indeed, the Colorado Legislature couched the phrase "full amount" to describe the refund, which suggests the very opposite of a pro-rata method. *See* Colo. Rev. Stat. § 13-54-102(1)(o) (2021) (providing an exemption for "[t]he *full amount* of any federal or state income tax refund *attributed to* an earned income tax credit or a child tax credit" (emphases added)). Had it intended a pro-rata method, the Colorado Legislature could have used qualifying phrases, like "portion of" or

10

"percentage of," but it failed to do so. *See Springer v. City & Cnty. of Denver*, 13 P.3d 794, 804 (Colo. 2000) (discouraging reading additional restrictions into a statute where the legislature has chosen not to implement them). To use a pro-rata method would devalue the "full amount" language that also appears in the statute.

The trustee contends that our decision in *Borgman* controls and mandates a favorable outcome for the estate. It is true that in *Borgman*, we interpreted the phrase "attributed to" and determined that a tax refund is "attributed to" all payments that generate the refund. 698 F.3d at 1261–62. But *Borgman* involved a *nonrefundable* child tax credit, which we have held is not a "payment" and thus cannot generate a "refund." *Id.* This case involves a *refundable* child tax credit, which was not disputed in *Borgman* as being capable of generating a refund. So while instructive, *Borgman* fails to bind us in the estate's favor, contrary to the trustee's contention.

The trustee also argues that a factual causation standard is error in this context because multiple causes exist. But again, had the Colorado Legislature wished to impose a more stringent causation standard, it could have done so by use of different language. Reading what the statute says, we rely upon its plain meaning to resolve this appeal.

Finally, and importantly, exemption statutes must be liberally construed in Colorado. *See* Colo. Const. art. XVIII, § 1 (The Colorado

Constitution requires the Legislature to pass "liberal . . . exemption laws.");
*Roup*, 349 P.3d at 276 (noting that courts in Colorado "liberally construe exemptions in favor of debtors"); *Sandberg v. Borstadt*, 109 P. 419, 421 (Colo. 1910) ("Primarily, the exemption laws of the state are for the benefit of residents, and they are to be liberally construed."); *see also In re Larson*, 260 B.R. 174, 193 (Bankr. D. Colo. 2001) ("[T]his Court notes the long-standing tradition in the courts of Colorado to construe all exemptions laws liberally in favor of debtors."); *In re Keyworth*, 47 B.R. 966, 974 (Bankr. D. Colo. 1985) ("The purpose of the Bankruptcy Code, and the Colorado exemption statutes, are to provide the debtor with a 'fresh start.'"). Which means that even if we were to find that both Garcia-Morales's and the trustee's interpretation of the "attributed to" language are equally plausible (which we do not), the liberal construction rule for exemptions would tip the balanced scale to the side of Garcia-Morales.

"A debtor's right to make full use of statutory exemptions is fundamental to bankruptcy law." *In re Warren*, 512 F.3d 1241, 1249 (10th Cir. 2008) (internal quotation marks omitted). We find the bankruptcy and district courts' reasoning persuasive. The refundable child tax credit caused Garcia-Morales's refund, and we liberally define such causation, making the refund wholly exempt under Colorado law. As such, the trustee's motion to compel turnover was properly denied. **AFFIRMED.**

12