FILED
United States Court of Appeals
Tenth Circuit

December 17, 2015

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

In re: JEFFREY DREW LAVENHAR,

Debtor.

--------------------------------

LAURIE LAVENHAR,

Appellant,

v.

FIRST AMERICAN TITLE
INSURANCE COMPANY,

Appellee.

No. 14-1391

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. NO. 1:13-CV-02160-MSK)**

---

David V. Wadsworth, Sender Wasserman Wadsworth, Denver, Colorado, for
Appellant.

Kirk B. Holleyman, Kirk Holleyman, P.C., Denver, Colorado, for Appellee.

---

Before **BRISCOE**, **MURPHY**, and **GORSUCH**, Circuit Judges.

---

**MURPHY**, Circuit Judge.

---

## I.  INTRODUCTION

This appeal arises out of a Chapter 7 bankruptcy petition filed by Jeffrey Lavenhar.  Jeffrey's ex-wife, Laurie Lavenhar, filed a proof of claim in Jeffrey's bankruptcy proceeding in the amount of $347,400.  She asserted the claim was a domestic support obligation entitled to priority under 11 U.S.C. § 507(a)(1).  First American Title Insurance Company ("First American"), a creditor in Jeffrey's bankruptcy proceeding, filed an objection to Laurie's proof of claim.  It asserted the entirety of the domestic support obligation underlying Laurie's proof of claim was obtained as a result of collusion between Jeffrey and Laurie in state-court divorce proceedings.  First American also sought relief from the automatic stay so it could seek a state-court declaration that the judgment upon which Laurie's claim was based was obtained by fraud on the court.  In an order designed to prevent the state-court proceedings from intruding on the prerogatives of the Chapter 7 Trustee, the bankruptcy court granted First American's motion to lift the stay.  The district court affirmed that order on appeal.  Laurie appeals to this court, asserting the bankruptcy court erred in granting First American's motion to lift the stay.  According to Laurie, First American lacks standing to litigate the validity of any component of the state-court judgment because the power to control property of the bankruptcy estate belongs solely to the Trustee.  This court exercises jurisdiction pursuant to 28 U.S.C. § 158(d) and **affirms** the narrowly tailored order of the bankruptcy court lifting the automatic stay.

## II. BACKGROUND

The events leading up to this bankruptcy case began in 2007, when First American brought suit against Jeffrey in Colorado state court.[1]  On October 28, 2010, the state trial court entered an order ruling in favor of First American and awarding damages in the amount of $434,913.39, plus interest.  Judgment entered on January 3, 2011.

During the pendency of this state-court litigation between Jeffrey and First American, the Lavenhars sought a divorce.  The divorce decree, which issued in November 2010, incorporated a separation agreement dated October 26, 2010. The separation agreement included an agreed-upon division of marital assets and contained a requirement that Jeffrey pay Laurie spousal support in the amount of $4400 per month.  Notably, the separation agreement contained the following recital:

> 10.  Real Property
>
> A.  The property located at 3227 Antelope Ridge Trail, Parker, Colorado, 80138, is owned by the Laurie H. Lavenhar Living Trust. The property is and has always been the sole property of the Laurie H. Lavenhar Living Trust.
>
> B.  The parties agree that 3227 Antelope Ridge Trail, Parker, Colorado, 80138 shall remain the separate property of the Laurie H. Lavenhar Living Trust without claim from the Husband.

---

[1]The facts of that underlying state-court lawsuit, as well as the lengthy procedural history attendant thereto, are not relevant to the issue on appeal.

-3-

After judgment entered in its favor in its suit against Jeffrey, First American sought to collect its damages. It filed suit against the Lavenhars and the Laurie H. Lavenhar Living Trust, asserting the transfer of Jeffrey's interest in the Antelope Ridge Trail property to the Laurie H. Lavenhar Living Trust was a fraudulent conveyance. In addition to that independent lawsuit, First American sought to intervene in the Lavenhars' divorce, seeking, inter alia, a declaration that the Lavenhars' divorce proceeding was a fraud upon the court designed to hinder its ability to collect on the judgment against Jeffrey. First American asserted the Lavenhars conspired to fraudulently induce the state court to take jurisdiction over their marital assets to hinder and defraud First American. These conspiratorial actions allegedly included the Lavenhars delaying the divorce proceedings until the resolution of the lawsuit against Jeffrey and then backdating the signatures on the separation agreement to make it appear Jeffrey signed the document before he knew the outcome. The state divorce court granted First American's motion to intervene.

Before the resolution of the various legal proceedings instituted by First American against the Lavenhars, Jeffrey filed a Chapter 7 bankruptcy petition. In the schedules to his bankruptcy petition, Jeffrey listed a priority domestic support obligation to Laurie in the amount of $464,300 and noted the Antelope Ridge Trail property was "[t]ransferred [to Laurie] pursuant to divorce decree." First American filed a motion to lift the automatic stay as to the Antelope Ridge Trail

property, asserting it should be able to litigate its state-court fraudulent conveyance action and, if successful in that litigation, perfect a judgment lien against the property. The bankruptcy court denied the motion, concluding that only the Chapter 7 Trustee had standing to bring the type of avoidance claim embodied in First American's state-court fraudulent conveyance action.

Shortly thereafter, Laurie filed a priority unsecured claim for domestic support obligations, *see* 11 U.S.C. § 507(a)(1), in the amount of $347,400. In support thereof, Laurie attached documentation from the divorce decree to her proof of claim. First American filed a new motion to lift the automatic stay, asserting the domestic support obligation underlying Laurie's proof of claim was obtained via fraud on the state divorce court. Accordingly, First American sought permission to litigate its complaint in intervention in the Lavenhars' divorce proceeding. In seeming disregard of the fact First American's new motion to lift the automatic stay was directed to its complaint in intervention in the state-court divorce proceeding, rather than its separate state-court suit to avoid fraudulent conveyances, Laurie simply asserted as follows:

> First American asserts the property division in the dissolution proceeding is an avoidable fraudulent transfer. As this Court previously ruled in connection with a prior motion seeking relief from stay filed by First American, "a pre-petition creditor lacks standing to pursue avoidance claims, as such claims become property of the estate. Therefore, only the Chapter 7 Trustee has standing to pursue" fraudulent conveyance claims.

For his part, the Chapter 7 Trustee filed a statement in support of First American's motion to lift the stay. The Trustee noted that the relief sought in First American's most recent request for relief from the stay was entirely distinct from the relief sought in First American's first such motion:

> The only effective way that a creditor, such as First American, or the Trustee could successfully object to the Laurie Lavenhar proof of claim is to directly attac[k] the orders of the [divorce court] in state court and ask that they be set aside. The Rooker-Feldman doctrine would prohibit a direct challenge of the state court orders that are the basis of the claim in this Court or any federal court.

> This Court has previously determined that First American lacks standing to pursue fraudulent transfer claims and that the Trustee is the only party that has standing to pursue those claims. Granting relief from the stay to allow First American to continue its attempt to have the orders of the divorce court set aside would not change the earlier ruling of this court regarding First American's lack of standing to pursue fraudulent transfer claims.

The bankruptcy court granted First American's motion to lift the stay. After reiterating its previous conclusion that First American lacked standing to seek an interest in the Antelope Ridge Trail property via a state-court action for fraudulent conveyance, the bankruptcy court concluded the issues First American sought to litigate in its state-court complaint in intervention were "separate from whether a fraudulent conveyance may be recovered."[2] Thus, the bankruptcy court lifted the automatic stay so that both First American *and* the Chapter 7 Trustee could litigate a portion of the complaint in intervention in the divorce proceeding,

_____

[2]The bankruptcy court noted that, in any event, the Chapter 7 Trustee had become a party in the state-court fraudulent conveyance action.

i.e., whether the state court divorce decree was obtained by fraud on the court. In an exercise of caution to protect the prerogatives of the Chapter 7 Trustee, the bankruptcy court ordered that "if the state court determines fraud has occurred, no adjudication of property issues may occur until after this Court first determines all issues concerning the property of the Estate." That is, the bankruptcy court lifted the automatic stay only in part, limiting the litigation of the complaint in intervention as to the single issue that would affect the validity of Laurie's proof of claim, but not as to any other issues resolved in the divorce decree.

Acting as an appellate court pursuant to 28 U.S.C. § 158(a)(1), the district court affirmed. The district court concluded the bankruptcy court's carefully limited order partially lifting the stay prevented the litigation of the complaint in intervention from impinging on any interests vested solely in the trustee. In particular, the district court concluded that "[c]onfined by the Bankruptcy Court's order, relief from the stay for First American does not directly impact the disposition of assets, and does not establish a superior position for First American with regard to other creditors. At most, it results in a benefit to all creditors."

Laurie appeals, asserting the bankruptcy and district courts erred in concluding First American has standing to litigate the validity of the component of the divorce decree addressing domestic support obligations via its state-court complaint in intervention.

### III.  ANALYSIS

On appeal, Laurie limits her argument to the contention the bankruptcy court erred in lifting the automatic stay because First American lacks standing to litigate its complaint in intervention in the state-court divorce proceeding.  That is, assuming First American does have standing, she does not assert the bankruptcy court abused its discretion in lifting the stay.  "In an appeal from a final decision of a bankruptcy court, we independently review the bankruptcy court's decision, applying the same standard as the bankruptcy appellate panel or district court."  *Aviva Life & Annuity Co. v. White (In re Millennium Multiple Emp'r Welfare Benefit Plan)*, 772 F.3d 634, 638 (10th Cir. 2014) (alteration and quotation omitted).  Whether First American is a "party in interest" for purposes of the Bankruptcy Code is a question of law subject to de novo review.  *Miller v. Deutsche Bank Nat'l Tr. Co. (In re Miller)*, 666 F.3d 1255, 1260-61 (10th Cir. 2012).

There is no doubt First American has an interest in the validity of the domestic support obligation set out in the state-court divorce decree.  11 U.S.C. § 502(a) (providing a "party in interest" can object to a proof of claim); *Adair v. Sherman*, 230 F.3d 890, 894 n.3 (7th Cir. 2000) ("Parties in interest include not only the debtor, but anyone who has a legally protected interest that could be affected by a bankruptcy proceeding.  Therefore, if one creditor files a potentially fraudulent proof of claim, other creditors have standing to object to the proof of

claim." (citation omitted)); *Nintendo Co., Ltd. v. Patten (In re Alpex Comput. Corp.)*, 71 F.3d 353, 356 (10th Cir. 1995) (holding that the bankruptcy term "party in interest" "is generally understood to include all persons whose pecuniary interests are[] directly affected by the bankruptcy proceedings" (quotations omitted)). Given the schedule of assets filed by Jeffrey, the elimination of Laurie's priority unsecured claim would result in a significantly larger recovery for all creditors. Thus, the only real question is whether allowing First American to litigate in state court a portion of its complaint in intervention intrudes upon the prerogatives of the Chapter 7 Trustee to exclusively control all assets of the bankruptcy estate. Under the unique facts of this case, we agree with the bankruptcy court that the answer to that question is "no."

Boiling all of her assertions down to their essential element, Laurie asserts the validity of property dispositions set out in the relevant divorce documents is not separable from the validity of the family support obligation set out in those same documents. That being the case, Laurie asserts allowing First American to litigate any aspect of the issue of validity impinges on the Chapter 7 Trustee's exclusive authority to control property of the estate. *See* 11 U.S.C. § 544 (providing bankruptcy trustees with power to avoid certain transfers of property or obligations incurred by the debtor); *id.* § 548 (empowering bankruptcy trustees to avoid certain fraudulent transfers); *Mauerhan v. Wagner Corp.*, 649 F.3d 1180, 1184 n.3 (10th Cir. 2011) ("When an individual files for bankruptcy, all interests

of the debtor become property of the bankruptcy estate, including causes of action. *See* 11 U.S.C. § 541(a)(1). The trustee of the bankruptcy estate has the sole capacity to sue and be sued over assets of the estate. *See* 11 U.S.C. § 323(b)." (citation omitted)).

This court perceives several problems with Laurie's assertions in this regard. First, Laurie's argument fails to account for the scope of the order lifting the stay, which specifically limits the issue that can be litigated in the complaint in intervention to whether the divorce decree was obtained by a fraud on the court. There is no indication in the record that the state divorce court cannot or will not comply with the limitations set out in the bankruptcy court order. To the contrary, the transcript of the second hearing on First American's second motion to lift the stay reveals the following: (1) The Chapter 7 Trustee intervened in the state fraudulent conveyance action and the state court permitted the Trustee to replace First American in litigating the action; and (2) the question of whether fraud had been committed on the court in connection with the Lavenhars' divorce will be litigated in the complaint in intervention,[3] but the validity of any property transfers made before the issuance of the divorce decree or in the divorce decree

---

[3]Furthermore, as both the Chapter 7 Trustee and First American demonstrated at the relevant hearing on the second motion to lift the stay, the state divorce court recognized that any determination fraud had been committed in connection with obtaining the divorce decree would immediately implicate only the domestic support obligation.

itself will be litigated by the Chapter 7 Trustee in the fraudulent conveyance proceeding.

Furthermore, Laurie's assertions notwithstanding, the record demonstrates the validity of property transfers at issue in the fraudulent conveyance action do not turn exclusively on the validity of the divorce decree. For instance, the allegedly collusive separation agreement does not purport to occasion a transfer of the Antelope Ridge Trail property from Jeffrey to Laurie. Instead, the agreement asserts that property has always been, and will continue to be the "sole and separate" property of the Laurie H. Lavenhar Living Trust. Thus, it is simply not true that the issue the bankruptcy court allowed to proceed in the motion in intervention, i.e., the validity of the domestic support obligation established by the divorce decree, is inseparably intertwined with the property-transfer issues to be litigated *by the trustee* in the fraudulent conveyance action.

Finally, the bankruptcy court not only lifted the automatic stay for First American to litigate a portion of the complaint in intervention, but also lifted the stay for the Chapter 7 Trustee to litigate that issue. At the second hearing on the motion to lift the stay, the Chapter 7 Trustee made the uncontested assertion that the bankruptcy estate's interests were perfectly aligned with First American's interests as to the validity of the domestic support obligation set out in Laurie's proof of claim. That is, a ruling on First American's behalf on the limited issue the bankruptcy court allowed to be litigated in the complaint in intervention

would benefit all creditors equally, not First American specifically. The Chapter 7 Trustee nevertheless told the bankruptcy court he would continue to monitor the proceedings in the divorce court to make sure they conformed to the limited lifting of the automatic stay and would intervene in the case if necessary to protect his prerogatives.[4] Thus, this case presents no danger of intrusion on the exclusive prerogatives of the Chapter 7 Trustee.

## IV. CONCLUSION

For those reasons set out above, the order of the bankruptcy court partially lifting the automatic stay to allow the state divorce court to declare whether or not the Lavenhars' divorce decree was obtained through fraud on the court is hereby **AFFIRMED**.

---

[4]This court is well-aware that in many, perhaps most, cases the bankruptcy trustee will be the party in interest objecting to purportedly fraudulent proofs of claim. *See* 11 U.S.C. § 704(a)(5) (providing that the trustee shall "if a purpose would be served, examine proofs of claims and object to the allowance of any claim that is improper"). At the second hearing on First American's motion to lift the stay as to its complaint in intervention, the Lavenhars repeatedly indicated there would be no problem if the Chapter 7 Trustee filed an objection to Laurie's proof of claim and moved to intervene himself in the complaint in intervention. This is a strange position to take given that (1) the Chapter 7 Trustee determined his interests were perfectly aligned with First American's interests, (2) First American would litigate the validity of Laurie's proof of claim without cost to the estate, and (3) the trustee would closely monitor the litigation in the divorce court to make sure it complied with the order lifting the stay. Under the particular facts of this case, we perceive no problem with the Chapter 7 Trustee allowing First American to vindicate the creditors' joint interest in attempting to invalidate Laurie's proof of claim and perceive no intrusion on the Chapter 7 Trustee's exclusive power to control estate property.