FILED
United States Court of Appeals
Tenth Circuit

August 29, 2016

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

In re: MICHAEL FREDERICK ANTHONY,

    Debtor.

--------------------

J&R INVESTMENT,

    Appellant,

v.

MICHAEL FREDERICK ANTHONY,

    Appellee.

No. 15-4161
(D.C. No. 2:14-CV-00647-RJS)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **MURPHY**, and **PHILLIPS**, Circuit Judges.
_____

Debtor Michael Anthony filed for Chapter 7 bankruptcy protection, *see* 11 U.S.C.

§701, *et seq.*, in the bankruptcy court for the District of Utah, and the court granted a

general discharge of his debts. One of his creditors, J&R Investment (J&R), then filed an

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

objection to discharge and sought revocation of his discharge under 11 U.S.C. § 727(d)(1) and (2). Those sections permit a bankruptcy court to revoke a Chapter 7 discharge if the "discharge was obtained through the fraud of the debtor," *id.* § 727(d)(1), or if the debtor fraudulently failed to report acquisition of property, *id.* § 727(d)(2). The bankruptcy court denied both grounds for revocation. Regarding § 727(d)(1), the court found that "any true errors in [Debtor's] bankruptcy papers were the result of his genuine ignorance, ineptitude, and confusion rather than any knowing fraud or even recklessness." Order at 12–13, Aplt. App. Vol. 2 at 534. As for § 727(d)(2), the court found that J&R had failed to show Debtor had any property of the estate he failed to report. Because the bankruptcy court did not clearly err in these findings, we affirm.

## I. BACKGROUND

Debtor began leasing commercial storage space for his business, Freedom Storage, from J&R when J&R was run by John and Rita Billinis. Following the deaths of John and Rita in 2005, J&R was run by their three children (Katherine, Alex, and Barbara), while a contested probate proceeding began in state court. J&R then sued Debtor in July 2006 for unpaid rent and sought his eviction. Debtor and Katherine Billinis married soon thereafter, in January 2007. In May 2007 the three children reached a settlement in the probate proceedings. Under the settlement Katherine gave up her interest in J&R and received ownership of several of J&R's other properties, with which she founded two companies (E.Z Storage, LLC and One Unit Investments, LLC) and hired Debtor to be the property manager of both. Even though the couple divorced in

2

2008, Debtor continued to serve as the property manager for One Unit Investments until May 2012 and for E.Z. Storage through at least August 2014.

J&R retained its interest in the suit against Debtor. In December 2007, J&R obtained partial summary judgment for $169,743.24 against Debtor but failed to obtain certification of the judgment until August 2010. After J&R obtained garnishment writs for Debtor's wages on both E.Z. Storage and One Unit Investments, Debtor filed a pro se bankruptcy petition on August 31, 2011. The court granted Debtor a general discharge on December 6, 2011. On December 4, 2012—two days before the deadline for seeking revocation of a discharge, *see id.* § 727(e)—J&R filed its complaint seeking revocation of Debtor's discharge. Relying on inconsistencies between his tax returns and his pro se Chapter 7 petition, it alleged that Debtor had obtained his discharge through fraud, *see* § 727(d)(1), and had failed to disclose or turn over property in his possession that should have become property of the estate, *see* § 727(d)(2). The parties stipulated in the pretrial order to a number of inaccuracies and inconsistencies in the bankruptcy filing. The bankruptcy court also heard testimony from Debtor, Katherine, and others.

The bankruptcy court issued its ruling on August 20, 2014. With regard to § 721(d)(1), the court said:

> In sum, the Court finds that any true errors in [Debtor's] bankruptcy papers were the result of his genuine ignorance, ineptitude, and confusion rather than any knowing fraud or even recklessness. So whether viewed as J&R failing to make a prima facie case on any particular allegation or [Debtor's] successful rebuttal of a properly made prima facie case, J&R has not met its burden to demonstrate the requisite fraud by a preponderance of the evidence.

Order at 12–13, Aplt. App. Vol. 2 at 534–35. And as to § 727(d)(2), the court held (1) that this section applies only to property acquired by the debtor after the petition is filed; and (2) that even if it applies to both pre- and post-petition acquisitions, J&R had failed to prove any such property was not reported. J&R appealed and the district court affirmed. We have jurisdiction over J&R's appeal under 28 U.S.C. § 158(d)(1) (granting courts of appeals jurisdiction over appeals of final decisions of district courts or bankruptcy appellate panels in bankruptcy cases).

## II. DISCUSSION

"In an appeal from a final decision of a bankruptcy court, we independently review the bankruptcy court's decision, applying the same standard [that] the bankruptcy appellate panel or district court" should have applied. *In re Millennium Multiple Employer Welfare Ben. Plan*, 772 F.3d 634, 638 (10th Cir. 2014) (alterations and internal quotation marks omitted). We review the bankruptcy court's legal conclusions de novo and its factual findings for clear error. *See id.* at 639. We are especially wary of finding clear error when the bankruptcy court's factual findings are based on the credibility of witness testimony. *See In re Young*, 237 F.3d 1168, 1176 (10th Cir. 2001) (" [A] credibility determination . . . is properly the province of the trier of fact—in this case the bankruptcy court—, and we may not disturb that trier of fact's credibility determinations on appeal.").

### A. Fraud of the Debtor - § 721(d)(1)

Chapter 7 provides that "on request of . . . a creditor . . . the court shall revoke a discharge granted under subsection (a) of this section if . . . such discharge was obtained

4

through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge." 11 U.S.C. § 727(d)(1). The lower courts and the parties have assumed that fraud includes making a false oath (in documents or testimony) in the bankruptcy proceeding, so we accept that proposition for purposes of this appeal. *See Grynberg v. Total S.A.*, 538 F.3d 1336, 1346 (10th Cir. 2008).

J&R essentially raises three arguments for reversal on this claim: (1) that the bankruptcy court erred in holding that it had not met its prima facie burden because the stipulated facts made out a prima facie case and the bankruptcy court was not permitted to disregard those facts; (2) that the bankruptcy district court improperly placed the burden of persuasion on J&R to prove knowing and fraudulent intent, because once it met its prima facie burden, Debtor had the burden to prove that the falsifications were not knowing and voluntary; and (3) that the bankruptcy district court clearly erred in finding that Debtor's errors were simply mistakes rather than knowing, fraudulent, or reckless omissions. We address these arguments in turn.

### 1. Prima Facie Case

"A plaintiff establishes a *prima facie* case by demonstrating that there are items which the debtor failed to disclose in his schedules or that the debtor falsely stated information in his schedules." *In re Matus*, 303 B.R. 660, 677 (Bankr. N.D. Ga. 2004). We agree with J&R's first argument. The stipulated facts make out a prima facie case. Debtor's tax returns and his bankruptcy filings are inconsistent on several material matters, including (1) Debtor failed to list income from Freedom Storage during 2009 and 2010, but his tax returns show he received "self-employment" income from that business

5

for those years; and (2) his income from E.Z. Storage and One Unit Investments reported in bankruptcy court is much lower than the amount listed as management fees in those business's tax returns. Also, Debtor admitted receiving two $2000 checks from One Unit Investments and E.Z. Storage shortly before filing his bankruptcy petition but failed to list them on his Payment Advices Certification. His statement that he did not receive any evidence of payment during his previous 60 days was therefore false. These inconsistencies and falsities are sufficient to show a prima facie case for false oath.

We reject, however, J&R's argument that the bankruptcy court erred in not finding that Debtor had failed to disclose that he was a profit-sharing partner in E.Z. Storage. After hearing testimony from Debtor and Katherine (the owner of E.Z. Storage), the bankruptcy court found that no such partnership existed, but instead that Katherine paid Debtor as "either a salaried employee or an independent contractor, essentially as [she] saw fit based on the net profits for the month." Order at 9; Aplt. App. Vol. 2 at 531. We cannot say the court clearly erred. Both testified that Debtor would not be paid if there was no money left over at the end of the month, but such an arrangement is consistent with the bankruptcy court's interpretation. A salaried employee or independent contractor may have to defer receiving compensation because of cash-flow constraints of the business. J&R did not present a prima facie case based on Debtor's failure to disclose a partnership.

### 2. Burden of Persuasion

Under § 727(a)(4)(A), "[a] debtor will not be denied discharge if a false statement is due to mere mistake or inadvertence. . . . Moreover, an honest error or mere inaccuracy

6

is not a proper basis for denial of discharge." *In re Brown*, 108 F.3d 1290, 1294–95 (10th Cir. 1997). J&R suggests that Debtor had the burden of persuasion on this point, and that the bankruptcy court erred in putting the burden on it. We disagree. Although a creditor's presentation of a prima facie case of false oath shifts the *burden of production* to the debtor to provide evidence that his or her false oath was not knowing or intentional, the ultimate burden of persuasion remains with the party seeking revocation. *See* Fed. R. Bankr. P. 4005 ("At the trial on a complaint objecting to a discharge, the plaintiff has the burden of proving the objection."); *see id.* Advisory Note ("This rule does not address the burden of going forward with the evidence. Subject to the allocation by the rule of the initial burden of producing evidence and the ultimate burden of persuasion, the rule leaves to the courts the formulation of rules governing the shift of the burden of going forward with the evidence in the light of considerations such as the difficulty of proving the nonexistence of a fact and of establishing a fact as to which the evidence is likely to be more accessible to the debtor than to the objector."); *In re Duncan*, 562 F.3d 688, 695–96 & n.1 (5th Cir. 2009) ("Under bankruptcy law, a creditor objecting to the debtor's discharge bears the initial burden of production to present evidence that the debtor made false statements. . . . If the plaintiff establishes a prima facie case, then the burden shifts to the debtor to present evidence that he is innocent of the charged offense . . . . The objecting creditor also bears the ultimate burden of persuasion."); *Farouki v. Emirates Bank Int'l, Ltd.*, 14 F.3d 244, 249 (4th Cir. 1994) ("Although the burden may shift to the debtor to provide satisfactory, explanatory

evidence once the creditor has established a *prima facie* case, the ultimate burden rests with the creditor.").

### 3. Court's Findings

J&R next contends that the evidence compelled a finding that Debtor's inaccuracies were a result of reckless indifference to the truth. He argues that the "mere quantity of [Debtor's] inaccuracies and misstatements are conclusive of [his] reckless[]" indifference to the truth, Aplt. Br. at 21, and that reckless indifference to the truth is the "functional equivalent of fraud for purposes of § 727(a)(4)(A)," *id*. at 8 (quoting *In re Butler*, 377 B.R. 895, 922 (Bankr. D. Utah 2006)). We agree with J&R that "fraudulent intent . . . may be inferred from circumstantial evidence considered in its totality." Aplt. Br. at 21. And J&R makes a strong argument that the facts here could lead to an inference of reckless indifference rather than mere negligence in filling out the bankruptcy forms. But the bankruptcy court was not *required* to draw that inference from the evidence here. It was free to reject such an inference if the evidence could reasonably be viewed otherwise. And we think it could be so viewed.

First, with regard to inconsistencies between tax returns and bankruptcy filings, the bankruptcy court thoroughly considered the evidence—including the testimony of Katherine, Debtor, and one of their accountants—and decided that these inconsistencies were a result of ignorance and mistake. The court accepted Debtor's and Katherine's testimony that it was their general practice to "provid[e] information to their accountants and then basically wash[] their hands of their tax returns." Order at 10; Aplt. App. Vol. 2 at 532. The court observed that "without his accountant to interpret his own 2009–12 tax

8

return transcripts, [Debtor] was at an earnest and utter loss to explain both their form and content." *Id.* The court said it was "wary of self-serving denials and feigned ignorance as a means of negating a finding of intent." *Id.* But it ultimately credited the testimony, saying "the Court is wholly convinced that neither [Debtor], Katherine, nor [Katherine's accountant] are feigning anything with regard to their tax returns, tax return transcripts, and related documents." *Id.* at 11. It noted that "[Debtor] was agitated at times on the stand, but the Court found his demeanor and testimony to be credible. The Court also found his lack of sophistication and confusion over tax, business, and overall financial issues to be sincere." *Id.* at 6 n.19. Such credibility determinations are for the fact-finder. The court's finding that inconsistencies between Debtor's bankruptcy and tax filings were a result of inadvertence and incompetence rather than fraud was not clearly erroneous.

J&R argues that in addition to false oaths in the bankruptcy filing, Debtor's failure to report income on his tax returns was intentional and showed his fraudulent intent in the bankruptcy as well. But the bankruptcy court credited Debtor's description of his practice of giving his information to a tax professional and then "washing [his] hands" of it. Order at 10; Aplt. App. Vol. 2 at 532. This was not clearly erroneous.

Two particular matters deserve further attention. One is an omission from the bankruptcy filings that appeared in the tax returns: Debtor's failure to report income from Freedom Storage. Again, however, the court's findings on this issue were not clearly erroneous. It first found that Debtor genuinely believed he did not need to report the Freedom Storage prior business income because it was no longer in operation at the time

9

of filing.  The court noted that Debtor did list Freedom Storage in the bankruptcy filing as a defunct dba.  This of course left the question whether Freedom Storage actually was defunct at the time of filing.  But on this point, the court said:

> J&R offered no evidence to contradict [Debtor's] assertion that Freedom Storage genuinely ceased operations in 2011 before he filed for bankruptcy. And only once, in closing arguments, did J&R address the 2012 [tax return] transcript, claiming that it was evidence of Freedom Storage's undisclosed ongoing operations both pre- and postpetition. But the 2012 transcript says nothing of the sort, and the evidence on this record just as easily or better supports the finding that [Debtor] started some kind of business for additional income after Katherine terminated him as One Unit Investments' property manager around May 2012.

Order at 9; Aplt. App. Vol. 2 at 531.  We cannot say this finding is clearly erroneous.  The 2012 tax return does not list "Freedom Storage" as the source of Debtor's self-employment income.  The court could reasonably credit Debtor's testimony over J&R's inconclusive evidence.

The other matter is Debtor's failure to list as payment advices a $2000 check from E.Z. Storage dated July 8, 2011, and a second $2000 check from One Unit Investments dated August 16, 2011.  But here the court found that Debtor genuinely did not know that the first check was a "payment advice."  It explained:

> [Debtor] credibly explained his misunderstanding and confusion based on footnote 1 of the Payment Advices Certification, which provides that a "'Payment Advice' includes, but is not limited to, pay stubs attached to your paycheck, employer's statement of hours and earnings, deposit notifications, etc."  Since he received only paper checks under Katherine's informal payment regime, it did not occur to him that they would qualify as payment advices.

Order at 11; Aplt. App. Vol. 2 at 533.  And for the second check, the court found that both Katherine and Debtor credibly testified that it was a wedding gift from Katherine for his daughter.  "Since the Money was really from Katherine, [Debtor] did not think to list

it [on the schedules as a gift]." *Id.* These findings, based largely on credibility determinations, were not clearly erroneous.

Seeing no clear error in the court's findings we affirm the ruling that J&R was not entitled to revocation under § 727(d)(1).

### B. Concealing Property of the Estate - § 721(d)(2)

Section 727(d)(2) provides that the court "shall revoke a discharge granted under subsection (a) of this section if . . . the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee." J&R argues that two items that Debtor failed to disclose or deliver were property of the estate: his interest in and income from his business, Freedom Storage, and the two $2000 checks from his employers. The bankruptcy court rejected the argument, holding that the section applies only to postpetition acquisitions by the debtor. But we need not opine on that issue because alternatively the court said:

> [E]ven if § 727(d)(2) did apply to both pre- and postpetition property that a debtor failed to report or turn over, and for the reasons already discussed above, J&R has not shown that [Debtor] had any relevant property in the form of business income, bank account funds, or otherwise. J&R also spent an inordinate amount of time trying to demonstrate that [Debtor] had a modest amount of outstanding wages due as of the petition date, but the evidence does not support that assertion either. Accordingly, [Debtor's] discharge will not be revoked under § 727(d)(2).

Order at 13; Aplt. App. Vol. 2 at 535. This alternative ground is not clearly erroneous. We discussed above that the bankruptcy court did not commit clear error in its factual finding that Freedom Storage had genuinely ceased operations in 2011 before the petition

11

was filed.  And J&R failed to present evidence before the bankruptcy court that any portion of the two $2000 checks within Debtor's possession was not included in the filing or turned over.  As the bankruptcy court said:  "J&R also assumed but presented no evidence in the form of testimony, bank statements, or otherwise that [Debtor] had any of those funds in his possession or control as of the petition date, and there is no basis for a finding that [Debtor] understated the amount of cash that he had on hand in Schedule B." Order at 11; Aplt. App. Vol. 2 at 533.

## III. CONCLUSION

We AFFIRM the bankruptcy court's decision.

Entered for the Court


Harris L Hartz
Circuit Judge

12